THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DYNASSUS BUGGS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-270-RAH-CWB |
| | ) | |
| DONNA LESLIE, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

Dynassus Buggs, a state inmate proceeding *pro se*, filed a petition under 28 U.S.C. § 2254 challenging the state court's denial of his motion for release under Rules 25.7(a) and 25.8(b) of the Alabama Rules of Criminal Procedure. (Doc. 1.) He claims the state court's ruling violated his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution. (*Id.* at 21.) Upon consideration of the record, the petition will be DENIED without an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Proceedings for the United States District Courts*.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Buggs was found not guilty by reason of mental disease or defect on charges of incest, rape, sexual abuse, and sodomy involving his minor daughter, in addition to assault charges involving four courtroom deputies at his bond revocation hearing. (Doc. 23 at 1; Doc. 1 at 4.) Buggs was committed to the custody of the Alabama Department of Mental Health and placed in Taylor Hardin Medical Facility in Tuscaloosa, Alabama. (Doc. 1 at 5.) In 2014, he was transferred to Hillside Therapeutic Group Home, a less restrictive facility in Wetumpka, Alabama. (*Id.*) In

2022, he filed a motion for release from Hillside to the care of his brother, Gaffery Buggs. (*Id.* at 7; Doc. 1-7.). After a hearing, Judge Bradley Almond denied the motion, finding that Buggs was still mentally ill and that he posed a real and present threat to himself or others if released. (Doc. 1 at 14–15; Doc. 1-18.)

Because the State of Alabama does not provide for a direct appeal from the denial of a Rule 25 motion, Buggs exhausted his state court remedies by first filing a petition for writ of mandamus in the Alabama Court of Criminal Appeals. (Doc. 1 at 16; Doc. 23 at 2.) The court denied his petition, finding that Buggs failed to satisfy the heavy burden required for a writ of mandamus. (Doc. 1-20 at 4.) He then filed a petition for writ of mandamus with the Alabama Supreme Court, which was denied on May 5, 2023. (Doc. 1-22.) Buggs timely filed the instant petition on May 3, 2024, within the one-year statute of limitation period found in 28 U.S.C. § 2244(d)(l). (*See* Doc. 23 at 2.) He alleges the trial court's denial of his motion for release was unreasonable in light of the evidence presented and, as a result, violated his Fifth and Fourteenth Amendment due process rights. (*See* Doc. 1 at 21.)

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to 28 U.S.C. § 2254(d), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment shall not be granted with respect to any claim adjudicated on the merits unless the adjudication "(1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."

Federal courts will presume a state court's factual findings are sound unless a petitioner meets the demanding standard of rebutting the "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, "[r]ecognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 20 (2013). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id*. at 18 (quoting *Wood v. Allen,* 558 U.S. 290, 301 (2010)). The AEDPA requires a state inmate to show the state court's ruling "was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Id.* at 20 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"If this standard is difficult to meet—and it is—that is because it was meant to be." *Id*. at 20 (quoting *Harrington*, 562 U.S. at 102) (internal quotation marks omitted). Federal courts "will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy." *Id.* (quoting *Harrington*, 562 U.S. at 102–103.) We must deny a § 2254 petition "[s]o long as any fairminded jurist could agree with the state court's ruling." *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019).

## DISCUSSION

As a matter of due process, it is "unconstitutional for a State to continue to confine a harmless, mentally ill person. Even if the initial commitment was permissible, 'it could not constitutionally continue after that basis no longer existed.'" *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992) (quoting *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975)). Due process requires that a "committed acquittee is entitled to [be released] when he has recovered his sanity or is no longer

3

dangerous . . . *i.e.*, the acquittee may be held as long as he is both mentally ill and dangerous, but no longer." *Id*. (internal quotation marks omitted).

## A.    Fifth Amendment Due Process Claim

Buggs's petition asserts that Judge Almond's ruling violated his Fifth and Fourteenth Amendment due process rights. However, the Fifth Amendment applies to the federal government, and the Fourteenth Amendment applies to state governments. *See Sims v. Glover*, 84 F. Supp. 2d 1273, 1288 (M.D. Ala. 1999) (recognizing that the Fifth Amendment due process clause cannot provide a basis for liability against state actors because it "applies only to the federal government.") (quoting *Sweatt v. Bailey*, 876 F. Supp. 1571, 1582 (M.D. Ala. 1995); *Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997) (noting that "[t]he Fifth Amendment obviously does not apply [because] the acts complained of were committed by state rather than federal officials."). Buggs makes no allegations in his petition against a federal official. Thus, any claim Buggs attempts to make under the due process clause of the Fifth Amendment is due to be dismissed.

## B.    Fourteenth Amendment Due Process Claim

Turning to Buggs's Fourteenth Amendment claim, the Court notes that his petition is based on § 2254(d)(2) only—that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented—and he makes no argument under § 2254(d)(1)—that the decision was contrary to or involved an unreasonable application of clearly established federal law. Additionally, the fact that Buggs is mentally ill is uncontested. (Doc. 1 at 23) ("Mr. Buggs never contended that he was no longer mentally ill."); (*see also* Doc. 1-7 at 9) (Buggs's motion for release, stating his psychological evaluators "did not shy away from the fact that Mr. Buggs still has a mental illness."). Accordingly, the only issue before this Court is whether Judge Almond's finding that Buggs is dangerous was unreasonable in light of the evidence presented.

4

### 1.  Buggs's Evidence That He Poses No Danger if Released

Buggs contends he provided ample evidence to the state court showing he poses no threat of substantial harm to himself or others and can be safely released into the community. Specifically, he relies on two mental health evaluations and three witnesses who testified at the hearing on his motion for release: Dr. Jennifer Cox, a licensed psychologist who evaluated Buggs; Carol Reynolds, the program director at Hillside; and his brother, Gaffery Buggs. (*See* Doc. 1 at 7–12.)

The mental health evaluations were each prepared by Dr. Cox and one of her graduate students. (Doc. 1-12 at 11–12.) As part of their evaluations, Dr. Cox and her students reviewed Buggs's criminal documents and treatment records, administered certain tests, and interviewed Buggs and his brother. (*Id.* at 12–17.) After the first evaluation, they concluded Buggs had a low-to-moderate risk of reoffending. (*Id.* at 18; doc. 1-8 at 8.) Following the second evaluation, they decreased their risk assessment and found he had a low risk of reoffending. (Doc. 1-12 at 18; doc. 1-9 at 6.) At the hearing, the state did not object to Dr. Cox's evaluations or challenge her qualifications as an expert witness. (Doc. 1-12 at 11–22.)

When testifying, Dr. Cox provided a list of recommended conditions to mitigate Buggs's risk of reoffending, including enrollment in job training or a community day program, participation in psychotherapy, participation in a substance abuse program to maintain sobriety, and refraining from unsupervised time with minors. (*Id.* at 20.) She also testified that Gaffery Buggs, the brother with whom Buggs planned to reside, "did not have a really great grasp on what Mr. Buggs'[s] mental illness looked like and would need some education regarding what his mental illness looks like." (*Id.* at 29.)

Gaffery Buggs testified about his willingness to care for Buggs in the home they own together in Tuscaloosa and to ensure that Buggs complies with court

orders, attends check-ins, and takes his medications. (*Id.* at 33–38.) Gaffery said he had been renovating the home where they would live, and he testified that the renovations would take one week to complete. (*Id.* at 36.) He also assured the trial court that he has no contact with Buggs's daughter or her mother and that no children would live in the home. (*Id.* at 39.)

Carol Reynolds, the program director at Hillside who is also an associate licensed counselor, testified that she has known Buggs for five years. (*Id.* at 46–47.) As program director, Reynolds's job is to make sure the group home has food and that the patients follow their treatment plans. (*Id.* at 46.) According to Reynolds, Buggs has "exceeded" the programs at Hillside and complies with his treatment and medication plans. (*Id.* at 48–50.) In 2018, because Buggs had an issue with taking "spice," he was court-ordered to take drug tests, and he has not tested positive since that condition was imposed. (*Id.* at 48–49.) Reynolds believes Buggs would be compliant with his medications if he had supervision, that he could handle his finances, perform daily living chores, and that he could safely be released to live with his brother. (*Id.* at 50, 53.)

In addition to the evidence presented at the hearing on Buggs's motion for release, in his petition, he argues his performance during two home passes after the hearing further demonstrates that he can be safely released. (Doc. 1 at 33.) Buggs was granted a home pass from October 5–9, 2022, and from December 5–7, 2022. (*See* Doc. 1-15; doc 1-16.) He asserts his compliance with all requirements imposed during his home passes shows he can comply with his medication, abstain from alcohol and drugs, and be a productive member of society, even outside a structured environment. (Doc. 1 at 33–34.)

### 2.    The State Court's Order

According to Buggs, the above evidence required Judge Almond to release him from confinement, and his ruling was an unreasonable determination of the facts based on that evidence. In denying Buggs's motion, Judge Almond stated as follows:

#### *Mental Illness*

Dr. Jennifer Cox testified at the release hearing. Dr. Cox, and her associates, evaluated the Defendant on two occasions. She testified that the Defendant has two mental health diagnoses: Pedophilic Disorder and Schizoaffective Disorder, Bipolar Type. Pedophilic Disorder is sexual attraction in children under 16 years of age (with the individual being over 16). Dr. Cox testified that the Defendant's "qualifiers" were that his interests are focused on females, limited to incest.

#### *Risk Factors*

Dr. Cox testified to a list of conditions which should be imposed in an attempt to minimize the Defendant's risk of reoffending. Those conditions include:
- a structured environment, i.e., a day program/employment
- continue with psychotropic medications
- psychotherapy, to help deal with triggers/stressors
- no alcohol
- no unsupervised time with minor children
- mental health education for Defendant's brother, with whom the  Defendant would reside.

Dr. Cox also testified that the Defendant, even during her most recent evaluation, continues to deny the underlying sexual offense. The Defendant believes his daughter made up the allegations after she found pornographic materials belonging to him. Dr. Cox acknowledged that such denial indicates an increased risk of re-offending.

Dr. Cox also explained that the Defendant has a delusional thought life regarding religiosity. He stated his belief that when he was 3 years old, God have him a gift - the ability to predict

7

the future. The Defendant believes God made him a special person. In 2018, the Defendant self-published a book which, according to Dr. Cox, is a written expression of his delusional beliefs. The book is entitled "The Answer, the Truth about the Holy Spirit, God, The Devil and Death, The Trinity, A Letter from Death."

Finally, the Defendant's brother was interviewed. The interview revealed that the brother "did not have a really great grasp on what [Defendant's] mental illness looked like." The brother stated "he did not believe his brother has a mental illness."

Based on the foregoing, the court finds that the Defendant remains mentally ill and that as a result, he continues to pose a real and present threat of substantial harm to himself or to others by being at large. . . .

Doc. 1-18.

### 3.   Evidence of Danger Presented at Buggs's Hearing

Although the Court agrees that Buggs presented evidence to support his claim that he is no longer dangerous, his petition omits any discussion of the evidence supporting Judge Almond's decision.[1] For example, Dr. Cox diagnosed Buggs with schizoaffective disorder (bipolar type) and pedophilic disorder (Doc. 1-8 at 6) and

---

[1] More than once in his petition, Buggs notes that the state did not file a written response to his motion for release, engage the assistance of a mental health expert to contradict his evidence, or present witnesses or introduce documents at the hearing. He suggests the state's failure to introduce its own documents or call its own witnesses means there was no evidence to support Judge Almond's decision. *See, e.g.,* Doc. 1 at 24 ("The State offered no evidence to contradict Mr. Buggs's assertion that he no longer poses a danger to himself or the community. The State did not object to Mr. Buggs's expert witness, Dr. Cox[,] or question her credentials. The State did not object to the admission of Dr. Cox's evaluation of Mr. Buggs. The State called no witnesses, expert or otherwise, of their own.") (internal record citations omitted); *see also* Doc. 1-19 at 24 (Petition for Writ of Mandamus filed with the Court of Criminal Appeals) ("Despite no evidence put on in support of [Buggs's] continuing dangerousness and significant evidence put forward by [Buggs] to support his claim that he is no longer dangerous, the court rejected [his] petition for release."). As set forth above, this contention ignores the testimony elicited by the state during its cross-examination of Buggs's witnesses.

testified about his delusional beliefs (Doc. 1-12 at 2.) While she opined that people with delusions can safely function in the community and placed Buggs at a low risk of reoffending, she admitted that she had conducted no research on sexual recidivism and had no knowledge of statistics on individuals with pedophilic disorder engaging in sexual violence. (*Id*. at 28.) Additionally, Dr. Cox testified that she and her students concluded Buggs had sexually assaulted his minor daughter but that Buggs continues to deny his conduct, which increases his risk of engaging in sexual violence in the future. (*Id*. at 20, 25, 27.)

Further, when Dr. Cox and her students lowered their assessment of Buggs's risk of reoffending, it was based on Buggs's plans about "how to support himself and occupy his time while in the community" and his "having gone another year without any reoffending and another year of stabilization on his medication." (*Id*. at 19.) Of course, the previous year was spent in confinement at Hillside, where Carol Reynolds, a licensed counselor familiar with Buggs's diagnoses, could monitor his compliance with treatment plans and medication. As for Buggs's plan to occupy his time in a structured environment, he intended to enroll in a day treatment program at Indian Rivers. Reynolds testified about the various services available at Indian Rivers; however, when asked if she had contacted Indian Rivers about accepting Buggs, she responded: "They just said it didn't fit his – they [weren't] able to take him because it's an index crime. But I didn't get further information from them."[2] (*Id*. at 52; doc. 23 at 11.)

---

[2] The Court has reviewed the Declaration of Catharine del Carmen, a college senior who was working as a social work intern when she prepared her declaration, which was submitted to the state court after the hearing on Buggs's motion for release. (Doc. 1-13.) In the affidavit, she states she conducted an online search of the available programs at Indian Rivers and that their website "does not indicate that individuals could be excluded from participation in programming based on index offense." (*Id*. ¶ 6.) She further states that she "spoke to a front desk associate," who told her all available programs were listed on their website. (*Id*. at ¶ 8.) The absence of information on a website and statements from a front desk clerk do not establish that Buggs was eligible to enroll

Buggs's release plan also included living with his brother, Gaffery Buggs, who, according to Dr. Cox, "would need some education regarding what his mental illness looks like." (Doc. 1-12 at 29.) Gaffery testified that he "wouldn't mind going to classes" to understand Buggs's mental health, but he admitted that he had taken no classes before the hearing. (*Id.* at 41.)  In fact, Gaffrey told Dr. Cox during his interview that "he did not believe his brother had a mental illness. . . . Although he did say that he was confused about his brother's . . . belief that he is God." (*Id.* at 30.) And despite testifying that she believed Buggs could be safely released into his brother's care, Dr. Cox testified that she had not spoken to Gaffery about Buggs's pedophilic disorder. During his testimony, Gaffery acknowledged that children live across the street from the home where he and Buggs would reside and that he did not learn until the day of the hearing that Buggs was diagnosed with pedophilic disorder or that he had sexually assaulted his minor daughter. (*Id.* at 40–44.) His understanding was simply that Buggs needed medication to "stay calm" and "not get [himself] in no trouble." (*Id.* at 40.) Regarding the home where Buggs would reside, while Gaffery testified that repairs would be completed in about a week, he also testified that he had been remodeling the home since 2019, that power had been off and on since that time, and that it did not have power on the day of the hearing. (*Id.* at 42.) Further, in an affidavit signed on June 7, 2022, more than two months before the August 29 hearing, Gaffery testified that he was finishing repairs and that the home would be complete "in a couple of weeks." (Doc. 1-11 at 2.)

With respect to Carol Reynolds's testimony, she opined that Buggs's insight into his mental illness had improved over the five years she has known him, as he had reached a point where he would "share his . . . story" in group discussions and

---

in treatment programs at Indian Rivers or contradict the testimony presented to Judge Almond at the motions hearing by Buggs's own witness, Carol Reynolds.

admit he has a mental illness and needs medication. However, she also testified that Buggs admits only to having bipolar disorder. (Doc. 1-12 at 52–53.) When asked if Buggs had achieved insight into his pedophilic disorder, Reynolds replied, "I would say that really [hasn't] been discussed."[3] (*Id.* at 53.)

Finally, the Court notes Buggs's argument regarding the two home passes Judge Almond granted while his motion for release was pending.[4] According to Buggs, "[t]he court cannot simultaneously say Mr. Buggs does not pose a danger to the community when granting his home passes[ ] and then deny his motion for release from Hillside because he 'continues to pose a real and present threat of substantial harm to himself or to others by being at large.'" (Doc. 1 at 34.) The Court finds this argument unpersuasive. The ability of Buggs to comply with medication and refrain from dangerous activity for a few days—and his brother's ability to supervise Buggs for a few days—does not establish that Buggs can safely be released to his brother indefinitely, particularly when the evidence shows that his brother had no knowledge or understanding of Buggs's diagnoses or what type of supervision would be required.

---

[3] Buggs states that "[t]he prosecutor, during her cross-examinations of witnesses and her closing arguments, harped on the fact that Mr. Buggs had not received treatment for his pedophilic disorder," and he argues that he should not be punished for the state's gap in treatment of his pedophilic disorder. (Doc. 1 at 38.) He asserts, for the first time, that the failure to provide specific treatment during his confinement violates his due process rights by allowing him to "languish rather than providing him appropriate care." (*Id.* at 39–40.) Because this issue has not been raised and exhausted in state court, the Court will not consider it now. *See, e.g., Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1342 (11th Cir. 2004) ("To raise an unexhausted claim for the first time in a federal habeas corpus proceeding, the petitioner must first establish cause and prejudice or miscarriage of justice for failing to exhaust the claim in state court.") (citation omitted). Buggs has made no attempt to establish cause and prejudice or a miscarriage of justice in his petition.

[4] Buggs asserts that he helped his brother make "significant repairs inside and outside their home" during his home visits. (Doc. 1 at 34.) Thus, it appears that the home repairs still had not been completed by December 2022.

In summary, the evidence described above supports a finding that Bugg's proposed treatment at Indian Rivers, which formed the basis of Dr. Cox's lower risk assessment and would provide Buggs with the structured environment he needs, was not a viable option; that Buggs's continued denial of his offenses and his pedophilic disorder increases his likelihood of recidivism; that his brother, who was to be tasked with supervising Buggs, was not even aware of Buggs's criminal history or mental health diagnoses on the date of the hearing; that the home where Buggs intended to live was still under repair and that the completion date was uncertain; and that Buggs had gained little or no insight into his pedophilic disorder during his confinement.[5] Thus, even if this Court were to find Buggs's evidence more convincing, it cannot find that Judge Almond's decision was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt*, 571 U.S. at 20 (citation omitted). *See Harrington*, 562 U.S. at 102 (citation omitted) ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

Because the undersigned finds that fairminded jurists could agree with Judge Almond's ruling, Buggs's petition must be denied. *Meders*, 911 F.3d at 1351.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Buggs's 28 U.S.C. § 2254 motion is **DENIED** without an evidentiary hearing, and this case is **DISMISSED** with prejudice. A separate Final Judgment will be issued.

---

[5] Although Judge Almond's order does not expressly discuss each piece of evidence outlined above, a federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief is not warranted, as long as the district court does not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts. *Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).

Furthermore, a certificate of appealability will not be issued. For a petitioner to obtain a certificate of appealability, he must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing requires that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). And, where a petition is denied on procedural grounds, he "must show not only that one or more of the claims he has raised presents a substantial constitutional issue, but also that there is a substantial issue about the correctness of the procedural ground on which the petition was denied." *Gordon v. Sec'y, Dep't of Corrs.*, 479 F.3d 1299, 1300 (11th Cir. 2007) (citations omitted). "A 'substantial question' about the procedural ruling means that the correctness of it under the law as it now stands is debatable among jurists of reason." *Id.* (citation omitted).

Because reasonable jurists would not find the denial of Bugg's § 2254 petition debatable, a certificate of appealability is DENIED.

**DONE** and **ORDERED** on this the 27th day of May 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE

13